Good afternoon, your honors. I apologize at the outset, this is my first appearance before any appellate court, so bear with me. Well, we're glad to have you here. Thank you. We'll break in just right. I need it. This case revolves around the plaintiff's medical care. The plaintiff's sole cause of action was that he was denied proper medical care at Orleans Parish Prison, essentially asserting a claim of cruel and unusual punishment. Prior to his incarceration, he was diagnosed with bladder cancer and had his bladder and the tumor inside of it removed in January of 2012. As a result, he was fitted with a urostomy bag. The plaintiff claimed in his complaint and the magistrate judge found in her order and reasons that during his incarceration, the medical director, Dr. Gore, of Orleans Parish Prison was deliberately indifferent to the plaintiff's serious medical needs in his personal as well as his supervisory capacity. Additionally, the magistrate judge also found that Dr. Gore was not entitled to qualified immunity. Dr. Gore asserts that these findings are manifest errors of law and asks this court to reverse those findings. An Eighth Amendment claim for inadequate medical care, as this court is well aware, is analyzed using the deliberate indifference standard. This court has repeatedly held that deliberate indifference is an extremely high standard to meet. It has been described as an unnecessary and wanton infliction of pain, repugnant to the conscience of mankind. The stringent standard requires a showing that a prison official knew of a serious risk to an inmate and that he disregarded it by failing to take reasonable measures to abate it, that the official refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in other similar conduct. Dr. Gore submits that he did not, his, oh I apologize, his individual conduct did not meet and does not meet those standards of law. Specifically, it is undisputed that Dr. Gore's personal involvement with Lawrence's medical care was limited to one visit on November 2nd. At that one visit, Dr. Gore himself took several steps to address Lawrence's medical complaints. He reviewed his records, he conducted a physical... What were his medical complaints now? I'm sorry? What were his medical complaints? I believe he had previously submitted what is called a sick call request in the middle of October that was triaged by a nurse and that nurse referred him to see a doctor at the next available date. He complained that... I mean, you can't say he's deliberately indifferent if they refer him to a nurse practitioner and they refer him to another doctor. It may be negligent, but it's not deliberate indifference. Well, that's essentially our point. I understand. I understand that was a friendly comment. But I'm asking you to tell me, if you can, what is the core of their complaint? Where is the Eighth Amendment claim for punishment here? I hesitate to speak for Mr. Lawrence. If I... I'm not asking you to speak for him. Why don't you speak for yourself? Based on my interpretation of the plaintiff's complaint and the arguments elicited at trial, I believe he was primarily dissatisfied with the urostomy bags, replacement bags, they were not deliberate indifference to his health and safety needs. What do you say about that? Why was the attention that they gave or didn't give to those bags, why was that not deliberate indifference to his health and safety needs? The sole defendant that were... Two defendants were sued, the sheriff and Dr. Gore. The sheriff was dismissed by the magistrate at trial. Dr. Gore is the only remaining defendant. Dr. Gore, and I had intended to address this further on, but Dr. Gore was not personally involved in procuring the urostomy bags. He was not personally involved in disseminating them to the inmates. He was not personally involved in any capacity. In fact, Dr. Gore notes that the first time he or any, there was any note in the file that the plaintiff was dissatisfied with his urostomy bags was on that November 2nd visit where he met with Dr. Gore. That is the first notation in the medical records that the plaintiff was... She entered a judgment for awarding $20,000. I'm sorry, Your Honor? What was the judgment that the magistrate judge entered? It was $20,000, yes. Against... Dr. Gore. Individually and against no one else. Correct. Okay. And you want us to reverse that? Yes, Your Honor. I don't believe that Dr. Gore... The judge found Dr. Gore liable personally and supervisorially. I don't believe that either one of those theories applies based on the evidence and testimony in the record. Just simply as a matter of law, Dr. Gore cannot be held liable in his personal capacity because he only had personal involvement one time. And that one time shows clearly that he attempted to address and physically examined and reviewed the records and ordered special adhesive tape to attempt to correct the problem that plaintiff was having with his bags being ill-fitting. His personal involvement... How was this case disposed of by the district court? Was it on summary judgment or did they actually have a hearing, trial? There was a bench trial before the magistrate judge. You consented to proceed before the magistrate judge? You consented to proceed before the magistrate judge? Yes, we did, Your Honor. So you're on direct appeal without bypass to district court? Yes, Your Honor. So as in summation, Dr. Gore's personal involvement... And some of your argument is that there's insufficient evidence to support the finding of deliberate indifference. In his personal capacity as well as his supervisor capacity, yes. That is essentially the core of my argument. In fact, I... Is there any other claim before us other than the Eighth Amendment claim of deliberate indifference? Not that I'm aware of, Your Honor, no. Well, you would be aware of it, wouldn't you? I would hope. Well, the supervisory liability, you would be... You're not talking about vicarious liability. You're talking about deliberate indifference to the task that he, as a supervisor, was supposed to perform. That is not entirely clear based on the magistrate's order. Obviously, as a matter of law, there's no vicarious liability in 1983. No record of that in 1983. So in interpreting the magistrate's holding that the plaintiff was... Or I'm sorry, that Dr. Gore must be held to answer as a supervising authority and that as a supervising physician he was intentionally indifferent, I can only think that because she cites the Tompkins case and that she was referring to some sort of deliberately indifferent policy that Dr. Gore implemented. And in a review of her judgment, the only policies that I came across that she mentioned at all was a policy regarding how outside appointments, outside referrals to other hospitals are handled and Dr. Gore's supervision of nurse practitioners and medical staff. Specifically... She's not finding Dr. Gore liable for the acts of... Or non-acts of subordinates. She's... I assume that she's trying to find Dr. Gore liable because of what he, as a physician, was obligated to do and was deliberately indifferent. That was my interpretation of her finding in his personal capacity. But in her discussion of... Does it matter here, a practical matter, if it... Because you've got to... If the judgment is against him, it's a rise or fall of what he did in any event, whether he is acting personally or... In other words, this is all about what Dr. Gore did or didn't do. Correct. With a requisite level of disregard. Very true. And thank you, I guess, for perhaps helping me to narrow my focus. I believe that what Dr. Gore did or did not do personally, I've already discussed and discussed at length in my brief. As far as what the magistrate judge says he did in his official capacity, I don't believe that her summary of Dr. Gore's testimony accurately reflects what was said. Specifically, regarding her complaints that the supervision of the staff was lax or was deliberately indifferent, she... He wasn't sued in his official capacity, was he? No, that's... I'm assuming that that's where she was going with finding... We don't have to assume that he wasn't sued in his official capacity. Then the only way that she could find him liable in his supervision... Because if he's not in his official capacity, you're suing the county. I'm sorry? If you sue an official in his official capacity, he's an official of what? A county, a prison? Right, the local government body. Correct. Right. In other words, the only defendant here is the physician. That's correct. And she found him liable, as I said, as a supervising position and as a supervising authority. And that clearly just is not allowed under 1983. How long had this magistrate judge been a judge? That information I don't have on hand, Your Honor. I'm sorry. It's Magistrate Roby. Been around a while? A couple years at least. So in trying to determine how she found him liable as a supervising physician, I came to the conclusion that it could only have been based on his implementing of a deliberately indifferent policy. And the only time she discussed policy in her order was related to his supervision of medical staff saying that they don't have a daily evaluation policy regarding the medical doctors and staff, but only a 90-day probation period, regular chart reviews, and an annual evaluation. She says that in the ROA site, the record on appeal site is 129. However, as stated, she seems to find fault with that policy. As stated, if there is an issue with supervision, I don't see how that policy that the judge described is constitutionally deficient. There's a 90-day probationary period for new nurses. There's regular chart reviews during the normal course of their duties. And there's an annual evaluation. In addition, Dr. Gore testified that additional feedback would be given to nurses on an as-needed basis. All right, now, when they filed the lawsuit, you filed an answer, right? Yes, Your Honor. All right, and did you ever make a motion for qualified immunity? We did specifically plead that in our answer, and we brought that up at trial as well. And what did the judge say about qualified immunity specifically? Well, thank you for bringing that up. That was my third and final point, and I see I'm running low on time. She denied our qualified immunity argument for Dr. Gore. Specifically, though, she denied it by saying she found him deliberately indifferent. And while that is a clear and established right at the time, that is not the entire qualified immunity analysis. There's a second prong that discusses objective reasonableness that the magistrate did not address at all, and neither did Mr. Lawrence. Essentially, in order to find qualified immunity. She just generally said if you allege and prove a deliberate indifference claim, you are not entitled to qualified immunity because everybody knows deliberate indifference is a constitutional violation. Essentially, that was her statement. But you didn't go into whether it was established, well-established, or partially established or anything else? Or reasonably, you said. While that is true, I believe that the focus of the qualified immunity analysis in this particular case is not whether deliberate indifference or adequate medical care is an established right, but rather whether Dr. Gore's conduct in light of that right was objectively reasonable. That is the second prong of any qualified immunity analysis. And in fact, there would be little purpose for qualified immunity as a defense if it was dependent on finding that no constitutional violation occurred. A defendant can have actually violated somebody's constitutional rights and still be entitled to qualified immunity. My time is up, and I thank you very much. Okay, Mr. Fisher, you're doing all right so far, so good. I appreciate it. We'll hear from Mr. Maul now. Thank you, Your Honor. May it please the Court, my name is Donald Maul, and I'm here on behalf of Anthony Lawrence, the appellee in this matter. Before I get into everything, I just want to hopefully- Have you ever tried a deliberate indifference case before? Pardon me? No, sir. As Mr. Fisher, this is the first time I've ever had the pleasure of being in front of someone. Well, we're glad to have you here. Now, I just wanted to just touch on the fact that, of the actual facts of this case, all right? So this is not just a medical needs case. This is a combination of a man that just had surgery, had his bladder, had his prostate removed, and had a urostomy bag and had a urostomy, a stoma. Just tell us, just tell us. I mean, we've read the briefs. Yes, sir. Just tell us, where is the deliberate indifference under the former standards of the United States Supreme Court? Yes, sir, deliberate indifference is found in two sections. One, it is found in the fact that after-pardon me-prior to even having examined the individual, Dr. Gore never even evaluated his records. He says that he saw his records, but in the trial testimony, he clearly states that I never got LSU's medical records until four days after he supposedly examined the person. All right? Secondly, it's also-the deliberate indifference is shown by the- to punish this man by being deliberately indifferent to his serious medical needs is because he didn't look at some-negligently failed, I guess, to look at some records. It's absolutely negligent, Your Honor. You're correct about that. However, it's not just the- You said it was negligence? It is, at a minimum, negligence, Your Honor. Deliberate indifference does not have to be an intentional act. You don't have to-and I understand, based on the-I'm sorry, Your Honor. That just translates to poor care. I mean, he didn't read some records. The man, it is what it is. He has no bladder and so forth. That's where he came to the hospital. And he's there, and he's got-somebody's got to-he's got to collect the urine, and the real problem, as I read it, was that they didn't have a properly fitting device to the body and to the bag. If I may, sir? Sure. With regards to that, what it is is that it wasn't-it's, yes, on one hand, they did not have the proper bags, okay? But the second part is that these bags that- But the doctor- These bags that were ordered were never actually brought to the gentleman. They were ordered by a nurse, Grain, who was a nurse practitioner that first met with Mr. Lawrence, and she ordered them. She also ordered him to the medical tier to be moved there instead of the tent city where he was at and made to sleep on the floor. They put him-she ordered-moved to medical tier, got ignored. Absolutely- How does Dr. Gore fit into that? Well, Dr. Gore is in charge of the policies as the medical director, Your Honor. Well, that doesn't make him responsible for that individual act. No, sir, but it makes him responsible for the acts of the medical prison. No. No, yes, it does, sir, because there's policies with- No, give me your authority that there is some supervisory responsibility under 1983 or liability under 1983. The only case that I can say, Your Honor, is the case that was cited by, pardon me, Magistrate Roby, which is the, I believe, Bell v. Tompkins case, where it states that there is that- What was the policy that you say Dr. Gore implemented that led to-that he was deliberately indifferent about? Well, it's the fact that there was no policy. There's a couple of things. First, there is no recordkeeping on the stock of anything with regards to what they have in-house. So if something was ordered, they have no idea whether it was ever-they have no idea whether they need to order something to begin with. So he did not supervise these people who were responsible for ordering, is what you're saying? He did more than that, Your Honor. He never had a policy to begin with with regards to what should happen. He was deliberately indifferent by not having a policy to order these devices in proper number or what? What is the deliberate indifference? The deliberate indifference, Your Honor, is that this was a guy that was basically at the mercy of the state to provide him with medical bags so that he could have at least some form of human dignity. He had a urostomy bag 32 inches wide that just made-that he has no control over. He's made to wallow in his own urine for days. When he asked for bags, they say, get him off the street. When he's run out of those bags that he can't get anymore, they give him a tolerance, Your Honor. Dr. Gore told him to- Pardon me? Dr. Gore told him to get him off the streets? Dr. Gore did not tell that to us specifically. Actually, Dr. Gore ordered him the bags that he requested, and then the bags never- Dr. Gore is a man that's tagged with liability, and he hasn't done anything that deserves liability. Pardon me? Under 1983. He ordered the bags, and then what do you say he failed to do after that? He failed to either make sure that the bags were-that there was a policy in place to ensure that the bags would be delivered. In fact, he even states in his trial testimony that there is no-pardon me. There's no notation of when medical supplies are ever received. They only have them when they're ordered. So he doesn't even have a policy in place to check that his orders are even being followed with, Your Honor. Your argument is essentially that Dr. Gore was deliberately indifferent to his responsibility as the physician in charge of his patient, and that when he orders the nurses to do X, Y, or Z, and it doesn't happen, and he makes no effort to check it, that he's deliberately indifferent to his responsibility to the patient. I think that's your argument, isn't it? It's part of it, sir, and it goes beyond that. The fact of the matter is he met him on November-forgive me, Your Honor, and I just- I mean, that was a big lifeline he was sending you, and I don't think I'd reject it out of hand. Forgive me if I seem like I was objecting, sir. I just wanted to add to that point. The fact of the matter is that, in addition, Mr. Gore-pardon me-Mr. Gore never-did not have a policy in place to check up on follow-up appointments with outside clinics, Your Honor. Mr. Lawrence was scheduled to meet with LSU Urology on June 28th. He let them know at his intake. He let them know on several sick calls and grievance forms that this follow-up had never been done, and it wasn't until Judge Roby, at the Spears hearing, found out that he had still not gone to the urology clinic that she ordered him to go, and then, magically, he's there the same day. Tell me what is the worst thing, the most intentional, deliberate indifference to the serious medical needs of your client that Dr. Gore personally committed? The worst. Pick out one. The worst. The worst is that he made him feel like less than a human being, Your Honor, when he made him wallow in his own urine for months. And he made him do it. He stood over him and, I mean, what did he do to make him do it? He had no policies in place, Your Honor. As medical director, he does have that duty, if I'm mistaken. I apologize. But as a-look, if this was just a case about him not giving him the proper medical treatment, I'd have nothing. I'd admit to you that. All right? But this is more than that. This is about human dignity. This is a guy made to wallow in his own human waste, and that's the thing. This court has even said it in Gates v. Cooks. Exposure to human waste evokes both the health concerns emphasized in Farmer and the more general standards of dignity embodied in the Eighth Amendment. Do we have anything other than the-I'm not suggesting it's sufficient or not, but the only thing we're talking about here is the arostomy bags themselves. Yes, Your Honor. There's the fact that the arostomy bags were, A, he never received one until August 3rd. He was told to get them off the streets until then. So that's about six weeks before he ever received one. And just to reiterate, in September he was given five bags total. Dr. Gore testified at trial that it should be changed every three to four days. If that was the case, then at a minimum, then at most ten days, right, at a minimum seven, seven and a half. All right? September he gets five days. Pardon me, in August he didn't get a new bag for two weeks between August 24th and September 7th. In December nine bags were given. However, he had to wait over a week between December 28th and January 5th to receive one. And in January he received three bags. And in February there's not a single record of him ever receiving one. These bags are supposed to be changed daily or when? Well, there is the LSU hospital, once he was ordered to go there, Your Honor, by Judge Roby, they listed that his bags should be changed daily. And his bags, despite the fact that his bags were clearly listed on the order that it should be changed daily, they were changed every three days. Did they offer him some kind of bag or not the kind of bag that he wanted? What are we talking about? Did they make available to him a bag of some sort every day and it was a bag that was dissatisfactory to his particular requirements, or did they just not give him any? According to the record, they never gave him one until August 3rd. The only instance that I can see. Of any kind? First time that I see that he had, according to the record, that he ever received a bag. The only other instance that I can see is that he wrote a grievance, pardon me, dated. He had a bag, but it should have been changed out. When you don't change it out, he still got the bag. Well, actually. Oh, you mean he has no bag at all? He doesn't have any bags, Your Honor. I mean, he's at the mercy of the state to provide him with one. He doesn't have them like, I'm sorry. What did the record show? I thought in the record that he got bags from the prison system, but they leaked because they were not the proper fit for the stoma. Correct? That is correct, Your Honor. So what happened was that he was leaking urine. If you don't have a bag, you're not leaking it. There's nothing we can gather from it. My apologies, Your Honor. Those are two different things. So I thought what you were talking about is a failure to timely change out these bags, and the doctor didn't properly see that that got done. You're correct, Your Honor. I must have misspoken. All right? Yes, you're absolutely right. In order for him, he at all times needs a bag because it's just a hole in the side of his abdomen. I mean, he has no control over it. It just operates as it normally would. We understand the condition. Now, so the fact of the matter is he was not given bags. When the bags leaked, he was not given a replacement bag. He was unable to change them himself. He had to go ask the nurses to change it for him. Well, what's the consequence? I know that's very uncomfortable, and it sounds very unhealthy, but what were the consequences? That presents a risk of perhaps infection or whatever, but I didn't see anything in here about any secondary infections. He had some rashes, and the doctor prescribed for that. So, I mean, I'm not making light of these difficulties, but what did that translate to? Infection, Your Honor. Infection. Infection, the fact that he – well, two things. One, because of the way that the bag is formed, and forgive me, I don't know how else to describe it, there is the stone, and then there is an adhesive that goes around the bag to hold it in place, right? That adhesive would come off at times, and he would need to be replaced with another bag. And it wasn't until January 20th of 2013, about seven months after he was in, that Dr. Gore ordered the staff to give him tape to be able to do it, to be able to keep that sucker on there. Seven months just sitting there, and then when it would leak, they'd give him a towel and let him soak it up that way. Did your client testify at trial? Pardon me, Your Honor? Did your client testify at trial? My client did testify at trial, yes, Your Honor. The magistrate judge found that Lawrence didn't receive his topical cream that had been ordered for him at the end of June until late July, and they'd never received a sufficient dosage of a prescribed antibiotic. Dr. Gore challenged that finding, that's the antibiotic, and pointed specifically to the medical charge, which indicated that he was given a full prescription, 20 pills lasting 10 days on January 11th, and you made no response to that. What do you say to that? I'll agree with that, Your Honor. It seems based on those medical records that he did get 20 pills to last him 10 days, and then there's no record of him ever receiving any more after that. Well, it appears that the magistrate misread the charts. A blank space did not necessarily mean that he didn't get the pill. It means that because he was already given the entire dosage. Your Honor, I can't speak on behalf of Magistrate Robey. I don't actually speak on behalf of Magistrate Robey. I do believe that she misread it. I believe that they had given him 10 to last however long. He was given 20 to last 10 days, and apparently they have a procedure at OPP where it's keep on person. Nevertheless— Well, the magistrate judge appeared to read blank spaces in the chart as being days in which he did not have pills when it's otherwise clear that those are simply the days in which he did have pills. In other words, you had 20 pills, and then they give him a pill on the first day, and then for the next 19 days he's got pills, and they don't make— that apparently is what happened in the records. What do you say? Is that right or not? I would agree with that, Your Honor. I believe that the way that you read the chart is correct. Nevertheless, I still do not believe that that in and of itself is sufficient to have Dr. Gore's judgment vacated. Well, the magistrate judge also found that Lawrence, I'm quoting, suffered for months with intestinal discomfort, pain, skin rashes, and eventually an infection requiring lengthy antibiotic treatment. The record says that Lawrence complained of rashes in July, again in January and February. Well, Your Honor, he begins to complain about pain starting August 14th of 2012. Then he also issued a grievance on August 15th of 2012. This was not replied to until September 17th, in which the reply stated, by D Administrative Medical—I don't know who that person is— but just stated, we'll notify medical department. August 20th, again, complaints of having pain and having to hold the bags. September 10th, 2012, sick call request, pain at urostomy site. September 11th, complaints of living conditions, pain, and the bags. September 14th, when the social worker reports pain. So what I'm trying to say, Your Honor, is that he was reporting this pain at least from August 14th. And so no one saw him and no one gave him any— Well, this is the thing. They would see him, Your Honor. However, they would only note he has a doctor visit scheduled and that's when someone— And how is that attributable to Dr. Gore? Dr. Gore is, at the end of the day, the head of the department. Well, you've got to make a chain. You've got to show he was told and ignored it. Forgive me, Your Honor. The way that I read the case is that he was not only deliberate and different in the way that he instituted policies with regards to the way that the medical department ran with regards to the inmates— Was he notified by anybody that things were going badly in the department and that these bad things were happening and he was on notice and he failed to take any action to fix it? I mean, is this a single incidence of liability or were other people having these problems and Gore was told about it and he didn't do anything? Pardon me, Your Honor. I haven't answered that, but it's not on the record, so I don't know how to describe it, but there is a consent judgment with the Orleans Parish Prison that was signed last year where they clearly— well, of course, they don't admit fault, but there was—the Justice Department got involved because— What's in the record? Let's stick with the record. I understand, Your Honor. I don't have any access to any other records from any other human being outside of Mr. Lawrence. Okay. You weren't able to depose Dr. Gore and ask him or the nurses or— I became involved with this case when Dr. Gore appealed it. I'm taking this case on pro bono for Mr. Lawrence. Okay. I'm just asking—okay, but don't be hostile to our questions. We're just trying to find— My apologies, Your Honor. We're just trying to find out what's in the record and what isn't. I know. I drank too much coffee today and my nerves are killing me, so I apologize. I mean, the policy cases where you put somebody else who's a policymaker is liable, generally speaking, when they're on notice of bad things happening and they don't take— fix it or try to fix it. And so was there evidence that Dr. Gore knew what was happening to Mr. Lawrence or others in the prison that policies were necessary and he just—he ignored it and said, I forget it? The only thing that comes directly to mind, Your Honor, is the fact that he— there was a specific policy problem with ordering medical records through LSU. At the time that he examined him, November 2nd, he didn't have any medical records to review. The records were ordered in June 24th by—pardon me, July 24th by Nurse Gray. So between that time and the time that he examined the patient, which is about four months, give or take, there was no medical record. So he—at that point, he would have known that there was some sort of policy problem with regards to how that's happening. Also, he also noticed that the referral to urology clinic at LSU, they never received it. And there is no record that it was ever followed up on. I mean, he notes it in his paper, but he did nothing to make sure that the referral actually was made to LSU. I mean, he only got to go to LSU Urology to get that infection treated because Judge Roby mandated them to take him immediately in the middle of the Spears hearing. I mean, that's amazing to me. It really is. I mean, this isn't— And what did LSU say about the infection? Pardon me, LSU put him on the antibiotics. The oral antibiotics for? Oh, that's the other thing. They don't have discharge papers, so I don't know. He made no effort to ever get them. All that we have in the record is them calling OPP and giving them oral orders. He wasn't hospitalized or he wasn't— Just one night, Your Honor. We're just trying to hear what's in the record. Again, forgive me. Okay. Well, thank you very much. And Mr. Maher, we'll hear from Mr. Richardson in rebuttal. Thank you. Thank you, Your Honor. Tim Richardson, also on behalf of Dr. Gore. Starting with a point Judge Owen made in terms of a policy, the law is very clear that if there is a deliberately indifferent policy, and this is citing from Porter v. Epps, 659, that third, 440, to establish that a state actor disregarded and known an obvious consequence of his actions, there must be active or constructive notice that a particular omission in their training program causes the employees to violate a citizen's constitutional rights. And to your point, Judge, and I'm quoting from the case, a pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference. Without notice that a course of training is deficient in a particular respect, decision makers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights. Otherwise, we apply a less stringent standard than deliberate indifference, which is basically responding as superior. And I think that's exactly correct, and to your point, Judge. But also, and I think this is also important, what we have here is a claim against Dr. Gore. And what I'm hearing and what I heard at the trial court, because I did try this case with Mr. Fisher, is a vicarious liability type of argument, a supervisory liability type of argument. And the law is very clear from Thompson v. Upshur out of this court, 174, Fed Third 550. This court has held, quote, This court has repeatedly held that ineffectious treatment, even grossly negligent treatment, or even care amounting to malpractice does not rise to the level of a constitutional tort. And there is no vicarious liability also in Section 1983. What is important, and this was a question that was raised by Judge Higginbotham, Sheriff Gussman was a defendant in this case. When we went to trial, Sheriff Gussman as the policymaker, the supervisory superior, the Monell claim that was there was before the judge. I moved for a judgment of matter of law at the close of plaintiff's evidence and at the close of the case for both Dr. Gore and for Sheriff Gussman. Sheriff Gussman was dismissed. So that Monell claim against Sheriff Gussman as the policymaker, as the entity, the county, the law enforcement official, was dismissed. So what we were left with is Dr. Gore. And we know that there cannot be supervisory liability, no vicarious liability as to Dr. Gore. So the question really becomes, did Dr. Gore in his individual capacity commit deliberate neglect? Well, we don't know that because he could have been supervising the medical aspect of the prison. That's correct. So he could have supervisory liability. That's true. And the question then becomes, where is the unconstitutional policy? Because Dr. Gore testified that the policy is, and this is on Record 374 or 375, that the policy is specifically to set follow-up appointments with OPP medical personnel. There's nothing in the record indicating that when patients come in that need bags, that they're not going to get them or that they're going to be left to suffer without bags. That was never proven on the record. Well, he, in fact, suffered without bags. I'm sorry, Your Honor? He, in fact, suffered without bags. Also, Your Honor, one point to that, there was a question as to whether or not he received bags. And there were statements made to this court that he didn't receive a bag until August. But I questioned Mr. Lawrence at trial, and I'm looking at page 107 of the transcript. I asked him specifically, just going back to that point there on 724.12, and that's right after he arrived, visit, going to the judge's questionnaire, I said, so you did have a bag, correct? And his answer on line 13, yeah. So he did have bags. The problem that he was concerned about is he didn't think his bag was changed enough. He didn't think he had the right kind of bags. But he was seen by Dr. Gore, and he was seen by staff repeatedly. In terms of what Dr. Gore did, he reviewed Ms. Lawrence's records, conducted a physical exam, had a discussion with plaintiffs regarding his Erosme bags, prescribed him two different medications, ordered him a thicker gel, ordered him a follow-up with a jail doctor, and ordered a urology appointment, all in the one visit that Dr. Gore saw. So in terms of Dr. Gore's individual capacity, no deliberate indifference, nor is there anything in the record showing a deliberately indifferent policy or custom pattern for denying an individual medical care that will rise to a constitutional claim. Thank you, Your Honor. Thank you, Mr. Richardson.